# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | |
|---|---|
| BONNIE POEHL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 4:05CV00400 ERW |
| | ) |
| OFFICER CARL RANDOLPH and | ) |
| CITY OF VINITA PARK, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

This matter is before the Court upon Defendant City of Vinita Park's Motion for Summary Judgment [doc. #30] and Defendant Carl Randolph's Motion for Summary Judgment [doc. #33].

## I.    BACKGROUND FACTS[1]

Plaintiff Bonnie Poehl ("Plaintiff") alleges that, in July 2003, she was raped by Defendant Carl Randolph ("Defendant Randolph"), who, at that time, was employed by the City of Vinita Park ("Defendant City" or "City") as a police officer. Plaintiff and Defendant Randolph report different accounts of the events which are the subject of this suit.

According to Plaintiff, she "had been in trouble with the Vinita Park Police Department and had been arrested and pulled over a lot." Pl.'s SUMF, ¶ 1. Plaintiff and Defendant Randolph first met at a liquor store where their mutual acquaintance worked. *Id.*, ¶ 2. Defendant Randolph

---

[1]Plaintiff originally brought suit against three defendants: Carl Randolph, the City of Vinita Park, and the Vinita Park Police Department. Defendant Vinita Park Police Department was dismissed on April 14, 2005. Thus, Carl Randolph and the City of Vinita Park are the two remaining defendants in this case. For this reason, allegations concerning the Vinita Park Police Department will not be discussed in this Memorandum and Opinion.

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

apparently was not on duty during this initial meeting. Later, when Plaintiff's purse was stolen, Defendant Randolph was on duty and responded to the call. *Id.*, ¶ 3. Thereafter, according to Plaintiff, she talked with Defendant Randolph on various occasions about the trouble she was having with the police, the harassment she was enduring from the police, and certain prior incidents of domestic violence with her boyfriend. *Id.*, ¶¶ 7-9. According to Plaintiff, Defendant Randolph called her at 1:00 a.m. on an undetermined date in July 2003 while he was on duty and in uniform and asked her to meet him at a nearby parking lot so that he could run a check on her warrant status to help protect her from harassment by other officers. *Id.*, ¶¶ 11-13. According to Plaintiff, she reluctantly agreed to meet Defendant Randolph in accordance with his instructions to her. *Id.*, ¶¶ 12-13. Plaintiff states that, sometime after she arrived at the agreed upon location, Defendant Randolph ordered her to lie down in the back seat of his squad car so that other officers would not see her and would not know that he was checking on her warrant status. *Id.*, ¶ 15. Defendant Randolph then drove to a warehouse area, where, according to Plaintiff, he grabbed her breasts, said that he had waited a long time to touch them and that they felt just as he thought they would, and ordered her to "drop them," referring to her pants. *Id.*, ¶¶ 18-20. Thereafter, according to Plaintiff, Defendant Randolph slammed his gun belt down on top of the car next to Plaintiff and demanded that she remove her pants. *Id.*, ¶ 24. Plaintiff states that Defendant Randolph then proceeded to rape her, both outside and inside of the patrol car. *Id.*, ¶ 29.

Defendant Randolph relates an entirely different account of events. According to Defendant Randolph, he and Plaintiff met on the evening in question and drove together to a location outside of the City. Def. Randolph's SUMF, ¶ 1, 4. Defendant Randolph states that, after arriving, they got out of the vehicle and talked for a while about their families and other non-police matters. *Id.*, ¶ 5.

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

According to Defendant Randolph, the two then had consensual sex. *Id.*, ¶ 6.

On March 10, 2005, Plaintiff brought various federal and state law claims against Defendants. On March 7, 2006, Defendant Randolph and Defendant City brought separate motions for summary judgment, arguing that they are entitled to judgment as a matter of law and that the claims against them should be dismissed.

## II.      SUMMARY JUDGMENT STANDARD

Pursuant to Federal Rule of Civil Procedure 56(c), a court may grant a motion for summary judgment only if all of the information before the court shows "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The United States Supreme Court has noted that "summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the federal rules as a whole, which are designed to 'secure the just, speedy and inexpensive determination of every action.'" *Id.* at 327 (quoting Fed. R. Civ. P. 1). "By its terms, [Rule 56(c)(1)] provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Material facts are those "that might affect the outcome of the suit under the governing law," and a genuine material fact is one such that "a reasonable jury could return a verdict for the nonmoving party." *Id*.

If the non-moving party has failed to "make a showing sufficient to establish the existence of an element essential to that party's case, . . . there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case

3

necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322-23. "Thus, where the moving party can point to the absence of any evidence satisfying a necessary element of a claim, such as damages, and the non-moving party fails to produce any such evidence, summary judgment is properly entered." *Meterlogic, Inc. v. KLT, Inc.*, 368 F.3d 1017, 1018 (8th Cir. 2004).

The initial burden of proof in a motion for summary judgment is placed on the moving party to establish the non-existence of any genuine issue of fact that is material to a judgment in its favor. *City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc.*, 838 F.2d 268, 273 (8th Cir. 1988). Once this burden is discharged, if the record does in fact bear out that no genuine dispute exists, the burden then shifts to the non-moving party who must set forth affirmative evidence and specific facts showing there is a genuine dispute on that issue. *Anderson*, 477 U.S. at 249. When the burden shifts, the non-moving party may not rest on the allegations in its pleadings, but by affidavit and other evidence must set forth specific facts showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e); *Stone Motor Co. v. Gen. Motors Corp.*, 293 F.3d 456, 465 (8th Cir. 2002). To meet its burden, the non-moving party must "do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In fact, the non-moving party must show there is sufficient evidence favoring the non-moving party which would enable a jury to return a verdict for it. *Anderson*, 477 U.S. at 249; *Celotex*, 477 U.S. at 324. "If the non-moving party fails to produce such evidence, summary judgment is proper." *Olson v. Pennzoil Co.*, 943 F.2d 881, 883 (8th Cir. 1991).

## III.    DISCUSSION

Plaintiff brings eight claims for relief, six of which are directed to both Defendants and two of which are directed to Defendant City alone. Counts One through Four are brought pursuant to

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

42 U.S.C. § 1983, while Counts Five through Eight are state law tort claims. Defendants argue that they are entitled to judgment as a matter of law on all eight counts.

     A.    <u>Section 1983 Claims: Counts One, Two, Three, and Four</u>

Section 1983 is a remedial statute. It provides that a person acting under "color of any statute, ordinance, regulation, custom, or usage, of a State or Territory or the District of Columbia" is liable for the "deprivation of any rights, privileges, or immunities secured by the Constitution and its laws." 42 U.S.C. § 1983. The statute is "merely a vehicle for seeking a federal remedy for violations of federally protected rights." *Foster v. Wyrick,* 823 F.2d 218, 221 (8th Cir. 1987). In a § 1983 action, two essential elements must be present: (1) the conduct complained of was committed by a person acting under color of state law; and (2) the conduct complained of deprived a plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States. *DuBose v. Kelly*, 187 F.3d 999, 1002 (8th Cir. 1999). Thus, in evaluating a § 1983 claim, the precise constitutional violation which is alleged must be identified. *Rogers v. City of Little Rock, Ark.*, 152 F.3d 790, 796 (8th Cir. 1998).

     1.    *Count Three as to Defendants Randolph and City*

In its response to the motions for summary judgment, Plaintiff has conceded that Count Three fails to state a claim upon which relief can be granted.[2] Therefore, the Court will dismiss Count Three as to both Defendants.

---

[2]Count Three is brought pursuant to 42 U.S.C. § 1983 for violation of the Violence Against Women Act, 42 U.S.C. § 13981(b). In *United States v. Morrison*, 529 U.S. 598 (2000), the United States Supreme Court held that Congress lacked constitutional authority to enact this statute. Thus, the statute is not enforceable, and Plaintiff has failed to state a claim upon which relief may be granted.

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

2.	*Counts One, Two, and Four as to Defendant Randolph*

Counts One, Two, and Four contain allegations directed to Defendant Randolph. In Count One, Plaintiff alleges that Defendant Randolph violated her right to bodily integrity in violation of her Fourteenth Amendment right to due process. Compl. ¶ 28, 30. In Count Two, Plaintiff alleges that Defendant Randolph "treated female citizens differently on the basis of their gender, by sexually harassing Plaintiff and other women in the community, and by sexually assaulting Plaintiff." Compl. ¶ 35. Plaintiff contends that this action denied her Fourteenth Amendment right to equal protection under the law. Compl. ¶ 36. Finally, in Count Four, Plaintiff alleges that Defendant Randolph lured her to his car under pretense of official state business and that he seized her and detained her in the back seat while he "drove her further away and for a longer period of time than she had at first anticipated, without official purpose." Compl. ¶ 43-44. Plaintiff alleges that Defendant Randolph detained her against her will in violation of the Fourth Amendment prohibition against unlawful seizures. Compl. ¶ 47.

Defendant Randolph argues that he is entitled to summary judgment with respect to Counts One, Two, and Four because: (1) he was not acting under color of state law at the time of the alleged rape; and (2) he is entitled to qualified immunity.[3]

i.	Acting Under Color of State Law

The Court first considers Defendant Randolph's claim that, as a matter of law, the evidence conclusively demonstrates that he was not acting under color of state law at the time of the alleged

---

[3]In moving for summary judgment, Defendant Randolph presents only these two arguments in support of his motion with respect to Counts One, Two, and Four. Therefore, the Court's consideration of Defendant Randolph's contention that he is entitled to judgment as a matter of law with respect to these three counts will be limited to an analysis of the two arguments he presents.

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

rape. "The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *West v. Atkins*, 487 U.S. 42, 49 (8th Cir. 1988) (internal quotation omitted). Generally, state employment is sufficient to render an individual a state actor. *West*, 487 U.S. at 49. "It is firmly established that a defendant in a § 1983 suit acts under color of state law when he abuses the position given to him by the State." *West*, 487 U.S. at 50. Indeed, "[m]isuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law, is action taken 'under color of' state law." *U.S. v. Classic*, 313 U.S. 299, 326 (1941). However, "under 'color' of law means under 'pretense' of law. Thus acts of officers in the ambit of their personal pursuits are plainly excluded. Acts of officers who undertake to perform their official duties are included whether they hew to the line of their authority or overstep it." *Screws v. U.S.*, 325 U.S. 91, 111 (1945). "Absent any actual or purported relationship between the officer's conduct and his duties as a police officer, the officer cannot be acting under color of state law." *Roe v. Humke*, 128 F.3d 1213, 1216 (8th Cir. 1997). As one court has noted, "[t]he key determinant is whether the actor, at the time in question, purposes to act in an official capacity or to exercise official responsibilities pursuant to state law." *Martinez v. Volon*, 54 F.3d 980, 986 (1st Cir. 1995). *See also id.* at 987 (challenged conduct must be related in some meaningful way either to officer's governmental status or performance of his duties).

Defendant Randolph argues that he was not acting under color of state law "at any time before, during, or after the alleged sexual contact he had with Plaintiff." Def. Randolph's Mem. in Supp., p. 1. Defendant Randolph contends that the evidence conclusively shows that Plaintiff met Defendant Randolph for a purpose that was contrary to his duties as a police officer and that the

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

location of the encounter was outside Defendant Randolph's jurisdiction.[4]  According to Defendant

Randolph, Plaintiff voluntarily left her home in the middle of the night to meet him because he was

going to check on her warrant status so as to protect her from, or warn her of, any potential arrest.

Plaintiff does not dispute this statement.  Further, according to Defendant Randolph, Plaintiff

understood that this purpose was inconsistent with, and contrary to, Defendant Randolph's duties as

a police officer.  Plaintiff disputes this statement.  According to Plaintiff, Defendant Randolph was

acting in his official capacity as a police officer when he met Plaintiff that evening because he met her

for the purpose of checking the status of her warrants, an activity that is among police officers'

official duties.

The initial burden of proof in a motion for summary judgment is placed on the moving party,

Defendant Randolph, to establish the non-existence of any genuine issue of fact that is material to a

judgment in his favor as to the issue of whether he was acting under color of state law.  *See City of*

*Mt. Pleasant*, 838 F.2d at 273.  The only evidence offered by Defendant Randolph with regard to his

claim that Plaintiff met him for a purpose that was unrelated to his duties as a police officer is a short

excerpt from Plaintiff's deposition testimony in which Plaintiff testifies that, after she met Defendant

Randolph that evening and after he ordered her to lie down in the back seat, Defendant Randolph

---

[4]In his Memorandum of Law, Defendant Randolph does not elaborate on this argument
and does not provide any citation to the record.  Therefore, the Court looks to Defendant
Randolph's Statement of Uncontroverted Material Facts and relies on the citations to the record
contained therein.  The Court has examined the evidence cited in Defendant Randolph's
Statement of Uncontroverted Material Facts and concludes that Defendant Randolph has failed to
demonstrate that no genuine issues of material fact remain as to whether he was acting under
color of state law.

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

gave her the impression that it was inappropriate for him to help her by checking her warrant status.[5]

Contrary to Defendant Randolph's contention, this evidence does not establish the absence of any genuine issue of material fact regarding whether he was acting under color of state law. Defendant Randolph uses the cited testimony in an attempt to show that Plaintiff met him that evening for a purpose completely divorced from his police duties and to show that both he and Plaintiff were meeting for a purely personal pursuit. At most, the cited testimony, if believed, could establish that Defendant Randolph gave Plaintiff the impression that it was inappropriate police procedure for him to help her by checking her warrant status. The cited testimony alone is insufficient to establish that Plaintiff and Defendant Randolph met that evening for a purely personal pursuit, especially given the many factual disputes contained in the record. Because Defendant Randolph has failed to meet his burden, he is not entitled to judgment as a matter of law. Based on the evidence in this case and

---

[5]Plaintiff testified as follows:

| | |
|---|---|
| A. | I asked him [where] he was taking me – I thought he was going to the church lot right by my house, and I asked him what's up. He said "I'm just going to go over here." That was the conversation. |
| Q. | That's while you were driving over there? |
| A. | Yes. |

. . .

| | |
|---|---|
| Q. | Were you lying down during the whole drive? |
| A. | Yes. |
| Q. | Why were you lying down? |
| A. | He told me to lay down so other officers wouldn't see me back there because he said they would put two and two together, you know, like when he run the warrant status, he said they would know. |
| Q. | And it was your understanding that it would have been inappropriate for [him] to have helped you in that way? |
| A. | I don't know. |
| Q. | Did he give you that impression, that it would have been inappropriate, inappropriate procedure for him to have helped you in that way? |
| A. | He did give me that. |

Def. Randolph's Ex. A, pp. 15-17.

9

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

viewing the evidence in the light most favorable to Plaintiff, a finder of fact could conclude that Defendant Randolph was acting under pretense of his authority as a police officer and was purporting to exercise the power given to him by the state during the events at issue in this case. *See Roe v. Humke*, 128 F.3d 1213, 1217 (8th Cir. 1997) (describing cases where acting under color of state law requirement was met; cases involved defendants who were acting under pretense of authority and purporting to exercise power given by the state). *Cf. id.* at 1216 (where police officer took plaintiff to his farm for own personal pursuits while off duty and not wearing his uniform or badge or carrying a gun and was driving his personal vehicle, "he was neither actually acting in his official capacity or exercising his responsibilities pursuant to state law, nor purporting to so act"). Because Defendant Randolph has failed to meet his burden of demonstrating that he was not acting under color of state law, he is not entitled to summary judgment on that basis with regard to Counts One, Two, or Four.

ii.    Qualified Immunity

The Court next considers Defendant Randolph's argument that he is entitled to qualified immunity with regard to Counts One, Two, and Four. Defendant Randolph states that the event described in Plaintiff's complaint was a consensual sexual encounter that did not violate any clearly established constitutional right. A qualified immunity analysis requires a two-step inquiry. The first question, taken in the light most favorable to the party asserting the injury, is whether the facts alleged show that the officer's conduct violated a constitutional right. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). If the facts show that the officer violated a constitutional right, then the second question is whether the right was clearly established at the time of the alleged violation. *Id.* at 202. In order to be clearly established, the contours of the right must be sufficiently clear that a reasonable official would understand that he is violating the right. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982);

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

*Anderson v. Creighton,* 483 U.S. 635, 640 (1987). If both inquiries are answered in the affirmative, the officer is not entitled to qualified immunity.

Here, Defendant Randolph is not entitled to qualified immunity. While Defendant Randolph presents evidence that the event described in Plaintiff's Complaint was a consensual sexual encounter, Plaintiff presents evidence that she was raped. As to the first step of the two-step qualified immunity inquiry, the Court examines the facts in the light most favorable to Plaintiff and concludes that the facts alleged, if true, demonstrate that Defendant Randolph violated Plaintiff's due process right to bodily integrity. As to the second step, the Court concludes that this due process right to bodily integrity was clearly established at the time of the event in question, which took place in July 2003. *See Rogers v. City of Little Rock, Ark.*, 152 F.3d 790, 795-96 (8th Cir. 1998) (substantive due process right to bodily integrity can be violated as the result of sexual assault by a state actor); *Haberthur v. City of Raymore, Missouri*, 119 F.3d 720, 723 (8th Cir. 1997) (same). A reasonable officer in Defendant Randolph's position would have known that the alleged actions violated a clearly established constitutional right. Therefore, Defendant Randolph is not entitled to qualified immunity as to Counts One, Two, or Four.

2. *Defendant City*

Counts One, Two, and Four against Defendant City are brought pursuant to 42 U.S.C. § 1983 and are premised on a theory that the City had a custom which led to Plaintiff's alleged injury. In Count One, Plaintiff alleges that Defendant City was deliberately indifferent to her constitutional rights and had a policy or custom of allowing Defendant Randolph's known sexual harassment and

11

"tendencies toward deviate predation" to continue unchecked.[6] Compl. ¶ 29. Count Two is a claim

that Defendant City treated Plaintiff disparately on the basis of her gender by not equally protecting

her safety and health by allowing her to be sexually assaulted and harassed without official purpose."[7]

Compl. ¶ 31. In this regard, Plaintiff alleges that Defendant City: (1) allowed its police officers "to

speak about women in a derogatory and harassing manner while on duty, in the police office, and

during official business," Compl. ¶ 32; (2) acquiesced to Defendant Randolph's known sexual

harassment by failing to prevent his behavior, Compl. ¶ 33; and (3) through deliberate indifference,

policy, and custom, allowed Defendant Randolph to continue his disparate treatment of female

citizens, Compl. ¶ 34. Finally, in Count Four, Plaintiff alleges that Defendant City had knowledge

of Defendant Randolph's "sexual interest in Plaintiff and his tendencies toward sexual harassment and

predation, but failed to prevent his unlawful seizure and detention of Plaintiff's body under color of

state law."[8] Compl. ¶ 41.

In moving for summary judgment with respect to the § 1983 claims, Defendant City argues

---

[6]Count One against Defendant City is based on a violation of Plaintiff's right to bodily integrity, as guaranteed by the Fourteenth Amendment's due process clause. As the Eighth Circuit has recognized, individuals have a substantive due process right to bodily integrity. *Rogers*, 152 F.3d at 795-96. This right can be violated as the result of sexual assault by a state actor. *See, e.g.*, *id.* (egregious sexual violation by police officer); *Haberthur v. City of Raymore, Missouri*, 119 F.3d 720, 723 (8th Cir. 1997) (officer fondled breast and chest, implied they should engage in further sexual conduct, and threatened adverse official action). "The threshold question in a due process challenge to abusive conduct by a state actor is whether the behavior of the governmental officer is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Rogers*, 152 F.3d at 797 (internal quotation omitted).

[7]Plaintiff contends that these actions denied her equal protection under the law, in violation of her Fourteenth Amendment right to equal protection.

[8]This claim is based on a violation of Plaintiff's Fourth Amendment right to be free from unlawful seizure and detainment.

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

that there is inadequate evidence to support Plaintiff's theory of recovery against it. Under § 1983, local governmental entities may be sued for declaratory and injunctive relief, as well as for compensatory damages. *Monell v. New York City Dept. of Soc. Servs.*, 436 U.S. 658, 690 (1978). Local governments may be sued directly under § 1983 where the alleged unconstitutional action "implements or executes a policy statement, ordinance, regulation or decision officially adopted and promulgated by that body's officers." *Id.* Local governments may also be sued for constitutional violations due to governmental "custom," even if such custom "has not received formal approval through the body's official decisionmaking channels." *Id.* at 690-91. A "custom or usage" is demonstrated by showing: (1) the existence of a "continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees"; (2) the governmental entity's deliberate indifference to or tacit authorization of misconduct after receiving notice thereof; and (3) that the custom was the moving force behind the constitutional violation. *Kula v. City of Minnetoka*, 365 F.3d 590, 604 (8th Cir. 2003). Importantly, while "[a] municipality is liable under § 1983 for unconstitutional acts by its officials or employees that implement or execute a municipal custom or policy, [it] may not be held vicariously liable for unconstitutional acts by employees." *Harris v. City of Pagedale*, 821 F.2d 499, 504 (8th Cir. 1987). In a § 1983 claim based on a municipality's failure to prevent misconduct by its employees, the municipality will only be held liable "where municipal officials can be shown to be directly responsible for the improper actions of their subordinates." *Id.* To this end, a plaintiff must demonstrate that city officials had notice of prior incidents of misconduct and deliberately failed to act on that information. *See id.*; *Andrews v. Fowler*, 98 F.3d 1069, 1075 (8th Cir. 1996). In other words, "[t]here must exist a prior pattern of unconstitutional conduct that is so persistent and widespread as to have the effect and force of law." *Andrews*, 98 F.3d at 1075

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

(internal quotation omitted).

In this case, Plaintiff's claims against the City are based on the City's alleged failure to prevent Defendant Randolph's misconduct. Plaintiff does not attempt to present evidence that the City has an official policy which led to her injury. Instead, Plaintiff contends that the City had a custom which permitted its police officers: (1) to engage in sexual assault and harassment; (2) to treat male citizens with more care than female citizens; and (3) to engage in unlawful seizures. According to Plaintiff, this custom was the driving force behind her alleged rape. Thus, to prevail on her § 1983 claims against the City, Plaintiff must demonstrate the existence of this custom by showing: (1) the existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the City's employees; (2) the City's indifference to or tacit authorization of the misconduct after receiving notice thereof; and (3) that this custom was the moving force behind her constitutional violations. *See Kula*, 365 F.3d at 604.

In support of its motion with respect to Counts One, Two, and Four, Defendant City first points to an absence of evidence from Plaintiff, arguing that Plaintiff has failed to produce evidence sufficient to establish that the City had a custom which permitted or encouraged its employees to engage in sexual harassment and assault, to treat male citizens more favorably than female citizens, or to seize citizens in violation of their Fourth Amendment rights. Defendant City also presents its own evidence, through the affidavit of Michael Webb, Chief of Police of the City of Vinita Park Police Department, that it does not have a policy or custom which led to Plaintiff's injury. In his affidavit, Chief Webb states that he has no knowledge of any female, other than Plaintiff, who claims to have been raped or sexually assaulted by Defendant Randolph. Def. City's Ex. A, ¶ 6. He also states that he is unaware of any complaint voiced by any female other than Plaintiff regarding

14

inappropriate behavior by Defendant Randolph. *Id.*, ¶ 7. He states that the City has a "zero tolerance" policy for sexual harassment, which was in effect in 2003. *Id.*, ¶ 16. He further states that he has "no knowledge of a single individual who claims that any member of the City of Vinita Park Police Department exhibited sexually aggressive behavior prior to [Plaintiff's] complaint." *Id.*, ¶8. According to Chief Webb, "[t]he City of Vinita Park does not have a policy or custom of allowing its police officers to sexually assault members of the public." *Id.*, ¶ 12. Chief Webb also states that "[t]he City of Vinita Park has neither a policy nor a custom of providing better law enforcement services to male citizens than to female citizens." *Id.*, ¶ 18. Further, according to Chief Webb, "[t]he City has neither a policy nor a custom of permitting police officers to speak about women in derogatory and harassing terms while in the police office." *Id.*, ¶ 26. Finally, according to Chief Webb, "[t]he City has neither a policy nor a custom of allowing police officers to detain individuals without reasonable suspicion that they have committed a crime, or to take them into police custody without probable cause to believe they have committed a crime." Id., ¶ 27.

In opposing Defendant City's motion with respect to Counts One, Two, and Four, Plaintiff states that there is sufficient evidence from which a reasonable jury could find that Defendant City had a custom which permitted Defendant Randolph to violate her constitutional rights. Throughout her Memorandum, Plaintiff points to various pieces of evidence which she maintains are sufficient to overcome Defendant City's motion. The Court has reviewed each of Plaintiff's contentions and has examined the evidence on which Plaintiff relies in support of her statements. Upon review, it is clear that Plaintiff has failed to set forth evidence establishing the existence of a custom or policy that led

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

to her constitutional injury. Further, the competent evidence[9] that Plaintiff does submit fails to create any genuine issue as to any material fact that might permit her to overcome Defendant City's motion. Plaintiff makes the following arguments in support of her contention that she has set forth sufficient evidence from which a jury could find the existence of an unconstitutional custom and that controverted issues of fact remain for trial: (1) Defendant Randolph had an affair with a married Vinita Park resident for eleven years;[10] (2) Defendant Randolph verbally harassed Vinita Park resident Susan Taylor, who complained to the Vinita Park Police Department, to no avail;[11] (3) Defendant

---

[9]Much of Plaintiff's evidence suffers from some defect, in most cases because it is not relevant to the issues before the Court or because it is not admissible and does not comply with Rule of Civil Procedure 56(e). According to Rule 56(e), "[s]upporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein."

[10]There is no indication that this alleged relationship was anything other than consensual. Moreover, there is nothing about such a relationship which is unconstitutional or which would have put the City on notice that Defendant Randolph would engage in the criminal misconduct of which he is accused. Further, there is no indication that the City had knowledge of this relationship.

[11]Plaintiff presents the affidavit of Susan Taylor. Ms. Taylor states that the Vinita Park police harassed her and kept her house under surveillance because they suspected illegal drug activity. Pl.'s Ex. 10, ¶ 3. She also states that Vinita Park police officers, including Defendant Randolph, have made racist statements directed at her. *Id.*, ¶ 7. She states that she made a formal complaint, but no investigation or results came from her complaint, except that the harassment declined somewhat. *Id.*, ¶ 12. She also states that, during a time when Defendant Randolph responded to a medical emergency call at her house, he asked her why she was with her boyfriend and said that he would treat her better. *Id.*, ¶ 14.

This evidence is not relevant. First, the allegedly racist comments would not have put the City on notice that Defendant Randolph was likely to sexually assault anyone, give greater care and protection to male citizens than to female citizens, or unlawfully seize citizens. Second, there is no indication that the City had or should have had any notice of Defendant Randolph's alleged comment that he would treat Ms. Taylor better than her boyfriend was treating her.

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

Randolph was known as "Carl, the Molester";[12] (4) Defendant Randolph was seen stopping cars with

women in them in order to flirt with them;[13] (5) Defendant Randolph physically

[12]Plaintiff presents the deposition testimony of Tom Farace, her former boyfriend, as evidence that Defendant Randolph was called by this nickname. Pl.'s Ex. 8. In his deposition, Mr. Farace relates an incident where he "said something like, Oh, Carl the molester, or something, you know, just kind of joking around." Pl.'s Ex. 8, p. 23. When asked why he had referred to him by that name, Mr. Farace replied, "Just I'd been living there for many years, and I never really seen or anything, heard, but just talk around the neighborhood saying that, you know, he just kind of flirts around with the women in the neighborhood." Pl.'s Ex. 8, 24-25. When asked whether he could name a single person who has spread such talk or participated in it, he responded that he could not. Pl.'s Ex. 8, p. 25. Later, Mr. Farace stated that he had "no real true basis or anything" for making the statement that Defendant Randolph was known by the nickname of "Carl, the molester." Pl.'s Ex. 8, p. 51.

It is doubtful that Mr. Farace's testimony is admissible for the purpose of demonstrating that Defendant Randolph was widely known in the community as "Carl, the molester." Even by his own testimony, Mr. Farace has no personal knowledge upon which to testify about Defendant Randolph's alleged nickname. He stated that he has no information to support the statement and that he could not name anyone else -- other than a vague reference to an unidentified neighbor who may have used the term many years ago -- who had used the term or seen Defendant Randolph engage in any wrongful conduct. More importantly, even if Mr. Farace's testimony could be used to show that some people in the community referred to Defendant Randolph as "Carl, the molester," Plaintiff has presented no admissible evidence that the City had any knowledge of Defendant Randolph's alleged nickname or that the City could have known of this nickname.

[13]In support of this contention, Plaintiff offers the deposition testimony of Mr. Farace:

Q.     At the times you observed [Defendant Randolph], was he doing anything other than sitting in a car?
A.     I seen him a few times, you know, talking to people walking down the road or whatever and girls and stuff like that, yes.
Q.     Have you ever seen him talking to men?
A.     No.
Q.     How many times have you observed him talking with women?
A.     Maybe a couple times, two or three times.

Pl.'s Ex. 8, p. 22. This testimony does not conclusively demonstrate that Defendant Randolph pulled women over to flirt with them. Moreover, this testimony does not establish that the City was aware of this alleged flirtatious conduct or that the City had any reason to be aware of the conduct. Finally, flirtatious conduct, while perhaps inappropriate, would not constitute the kind

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

touched and "violated" Vinita Park resident Yvette Redmond at a police ball;[14] (6) Defendant

Randolph sexually harassed Vinita Park resident Gwen Davis after meeting her on a domestic

violence call;[15] (7) Defendant Randolph missed his sexual harassment training;[16]

---

of persistent and widespread pattern of unconstitutional conduct required for Plaintiff to prevail upon her claims.

[14]The evidence Plaintiff offers in support of this contention is an affidavit from Yvette Redmond. Pl.'s Ex. 9. Ms. Redmond states that Defendant Randolph inappropriately touched her thigh when she attended a Policeman and Fireman's Ball at the Ambassador nightclub in 2001. Pl.'s Ex. 9, ¶¶ 3, 8. There is no indication that Ms. Redmond reported the incident and no indication that the City knew or could have known of this incident. Moreover, this conduct, while perhaps inappropriate, does not rise to the level of persistent and widespread unconstitutional conduct.

[15]Plaintiff offers various pieces of evidence in support of this claim, but none of the evidence is sufficient to permit a finder of fact to hold the City liable. *See* Pl.'s Ex. 2 (deposition testimony of Defendant Randolph in which he admits that he was trying to establish a romantic relationship with Ms. Davis); Pl.'s Ex. 4 (deposition of Michael Laws, explaining what Ms. Davis reported to him in the course of his investigation of Plaintiff's alleged rape); Pl.'s Ex. 5 (deposition of Richard Fairman, explaining his investigation of Plaintiff's alleged rape); Pl.'s Ex. 19 (police report documenting Defendant Randolph's response to a domestic disturbance call at the home of Gwen Davis); Pl.'s Ex. 20 (narrative from Detective Haywood detailing what Plaintiff told him about the alleged rape); Pl.'s Ex. 21 (narrative from Lt. R. Fairman detailing his investigation of Plaintiff's rape); Pl.'s Ex. 23 (police report detailing the investigation of Plaintiff's alleged rape, which describes an interview with Ms. Davis and details efforts by Defendant Randolph to establish a personal relationship with her); Pl.'s Ex. 24 (narrative from Plaintiff explaining events surrounding alleged rape); Pl.'s Ex. 26 (transcript of telephone calls allegedly made by Defendant Randolph to Ms. Davis).

Some of this evidence is not admissible for the purpose of establishing the truth of the matters asserted therein due to numerous hearsay problems. To the extent the evidence is admissible, there is no indication whatsoever that Ms. Davis ever reported these unwelcome advances, that anyone other than Ms. Davis, her boyfriend, and Defendant Randolph knew about the unwelcome advances, or that the City had any other notice of Defendant Randolph's behavior. There is also no indication that Defendant Randolph attempted to sexually assault Ms. Davis. In fact, the Court notes that the evidence related to the investigation of Plaintiff's alleged rape tends to demonstrate that the City first learned of Ms. Davis's allegations during the course of its investigation into the alleged rape. Chief Webb took swift action upon completion of the investigation. The evidence tends to show that the City was anything but indifferent to the alleged violation of Plaintiff's constitutional rights.

18

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

(8) the Chief of Police believed that it was only a violation to sexually pursue women on duty if the women complained or if the allegations were substantiated;[17] (9) the Chief of Police and Officer Haywood laughed and joked about Defendant Randolph's propensity to sexually pursue women he met on duty.[18]  Plaintiff states that, based on this evidence, a reasonable fact finder could conclude that the City had a custom of being deliberately indifferent to and tacitly authorizing Defendant Randolph's unconstitutional conduct and that this custom was the moving force behind her alleged

---

[16]It is true that Defendant Randolph apparently missed a sexual harassment training session.  *See* Pl.'s Ex. 3, p. 11-12.  However, as Defendant City correctly points out, Defendant Randolph was reprimanded for his neglect and he subsequently attended another sexual harassment training class.  Def. City's Ex. A, p. 2; Def. City's Ex. C, p. 11, 42.  Plaintiff does not dispute this, and there is not a genuine issue as to any material fact regarding the issue of whether Defendant Randolph underwent sexual harassment training.  The evidence shows that he did attend sexual harassment training.

[17]Plaintiff completely mischaracterizes Chief Webb's testimony.  The cited testimony indicates that unwelcome calls, which, by definition, would be those of which a woman would complain, would constitute conduct unbecoming a police officer.  *See* Pl.'s Ex. 3, p. 31-32.  The cited testimony does not support Plaintiff's claim.

[18]Plaintiff offers her own deposition testimony in support of this conclusion.  In her deposition, Plaintiff describes an incident where Detective Haywood, in the presence of Chief Webb, asked Plaintiff whether Defendant Randolph had ever "put the moves" on her.  Pl.'s Ex. 1, p. 240-41.  Plaintiff states that both Detective Haywood and Chief Webb laughed when Detective Haywood asked this question.  *Id.* at 241.  This incident took place some time after the alleged rape.  *Id.*

Even if the cited testimony could be said to support Plaintiff's argument and even when considered in the light most favorable to Plaintiff, this evidence is far from enough to establish the existence of an unconstitutional municipal custom.  Plaintiff cites to no case which might in any way support her contention that this evidence is enough to establish the existence of a pattern of sexual misconduct by Defendant Randolph, or any other officer, or that the City failed to take remedial action when such action was required.  This Court's own independent research has revealed no such case.  Indeed, relevant precedent makes clear that far more is required.  *See, e.g.*, *Andrews*, 98 F.3d 1069; *Harris v. City of Pagedale*, 821 F.2d 499 (8th Cir. 1987).

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

injury.[19]

A thorough examination of the evidence upon which Plaintiff relies reveals that Plaintiff has failed to meet her burden of overcoming Defendant City's motion for summary judgment. Plaintiff has failed to come forward with evidence sufficient to permit a jury to find that the City had a policy or custom of permitting any of its officers, including Defendant Randolph, to sexually assault women, to treat female citizens differently from male citizens, or to unlawfully seize citizens. Plaintiff has failed to offer evidence from which a fact-finder could conclude that there was a persistent and widespread pattern of misconduct and that her injury was caused by this custom.[20] Moreover, she presents no evidence that Defendant City was deliberately indifferent to or tacitly authorized the alleged misconduct after receiving notice of it.[21] *See, e.g.*, *Andrews v. Fowler*, 98 F.3d 1069 (8th

---

[19]Plaintiff's theory of recovery against Defendant City necessarily requires that Plaintiff demonstrate that City officials had notice of *prior* incidents of misconduct and deliberately failed to act on that information. Throughout her Memorandum, Plaintiff makes numerous references to evidence that stems from the investigation of her alleged rape or from events which took place after her alleged injury. Much of this evidence is not relevant to the question of whether City officials had notice of prior incidents of misconduct upon which they deliberately failed to act. In the preceding discussion, the Court has addressed only that evidence which might in some way be relevant to the issues before the Court.

[20]Plaintiff states that Vinita Park police officers spoke about women in a derogatory and harassing manner while on duty in the police office. Defendant City, through the affidavit of Chief Webb, disputes this allegation. *See* Def. City's Ex. A, ¶ 26. This does not create a genuine issue of material fact, however, because Plaintiff has failed to allege, or offer any evidence to explain, how this incident led to her injury. Plaintiff makes no connection between the alleged derogatory comments made in the police office and the conduct of which she accuses Officer Randolph and makes no showing of a pattern of misconduct.

[21]In fact, the record demonstrates that Defendant City takes seriously any allegations of sexual assault. In his affidavit, Chief Webb describes the actions that were taken after he became aware of Plaintiff's complaint: Defendant Randolph was placed on strict desk duty pending an investigation. The criminal investigation was referred to another police department. When the St. Louis County Prosecuting Attorney declined to issue any criminal charges, Chief Webb ordered an Internal Affairs investigation. During the course of that investigation, Defendant Randolph

Cir. 1996) (notwithstanding two instances of misconduct indicating police chief was aware that some problem existed with officer, plaintiff failed to establish a persistent and widespread pattern of misconduct that amounts to a city custom or policy).[22]   Therefore, Defendant City is entitled to judgment as a matter of law with respect to Counts One, Two, and Four.

B.      State Law Tort Claims:  Counts Five, Six, Seven, and Eight

In Counts Five through Eight, Plaintiff brings state law tort claims against both Defendant Randolph and Defendant City, including claims for assault, battery, intentional infliction of emotional distress, negligent infliction of emotional distress, negligent retention and hiring, and negligent supervision.  As an initial matter, it is clear that both Defendants are entitled to judgment as a matter of law with respect to the claims for negligent and intentional infliction of emotional distress contained in Count Six of Plaintiff's Complaint.  The torts of negligent and intentional infliction of emotional distress require Plaintiff to demonstrate that she suffered a medically diagnosable injury as a result of the alleged sexual assault.  *See Bass v. Nooney*, 646 S.W.2d 765, 772-73 ("emotional distress or mental injury must be medically diagnosable and must be of sufficient severity so as to be medically significant").  Plaintiff has failed to produce any competent evidence that she suffered a medically diagnosable injury, and she is therefore unable to prevail upon a claim for either negligent

---

admitted that he had sexual contact with Plaintiff while on duty, but claimed it was consensual. Chief Webb suspended Defendant Randolph.  Defendant Randolph resigned before Chief Webb had an opportunity to ask the Board of Aldermen to terminate Defendant Randolph's employment.  Def. City's Ex. A, ¶¶ 21-23.

[22]To the extent that Plaintiff's theory of liability against Defendant City is that it should be held strictly liable for the alleged rape, Plaintiff is misguided.  A municipality is not subject to *respondeat superior* liability.  *Harris*, 821 F.2d at 504 ("municipality is liable under § 1983 for unconstitutional acts by its officials or employees that implement or execute a municipal custom or policy, [but it] may not be held vicariously liable for unconstitutional acts by employees").

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

or intentional infliction of emotional distress.[23]  Therefore, Defendant City and Defendant Randolph are entitled to judgment as a matter of law with respect to Count Six.  Count Five, directed toward both Defendants, as well as Counts Seven and Eight, directed toward Defendant City alone, are considered below.

### 1.    *Defendant Randolph*

Count Five is a claim for "assault and battery."  Plaintiff alleges that Defendant Randolph sexually assaulted her, thereby causing her to fear and suffer bodily harm and substantial injury. Compl. ¶ 49.  "[A]n assault is any unlawful offer or attempt to injure another with the apparent present ability to effectuate the attempt under circumstances creating a fear of imminent peril." *Adler v. Ewing*, 347 S.W.2d 396, 402 (Mo. Ct. App. 1961).  "A battery is the willful touching of the person

---

[23]In support of their motions for summary judgment with respect to Count Six, Defendants note that Plaintiff has failed to produce any evidence of a medically diagnosable injury.  According to Defendant Randolph, Plaintiff has failed to produce any evidence related to a medical diagnosis, notwithstanding repeated requests that she do so.  Further, according to Defendant City, Plaintiff has not endorsed a medical expert in this lawsuit, and she testified in her deposition that no doctor or health care provider has given her a diagnosis as a result of the alleged sexual assault.  *See* Def. City's Ex. C, p. 189.

In response, Plaintiff argues that she has presented evidence which demonstrates that her distress was medically diagnosable.  First, Plaintiff points to her own deposition testimony that she was depressed, afraid, and slept a lot after the alleged rape.  Pl.'s Ex. 1, pp. 167-68.  Plaintiff is not competent to offer a diagnosis of clinical depression, and her deposition testimony is therefore not sufficient to defeat Defendant City's motion for summary judgment.  Second, Plaintiff offers what appear to be medical records from a Dr. Co, who appears to be Plaintiff's mental health care provider.  *See* Pl.'s Ex. 16.  These medical records are not authenticated.  Even if these medical records are a true and correct copy of Dr. Co's records, they do not support Plaintiff's assertion that her psychiatrist increased her Lexapro dosage for depression and anxiety after the alleged rape.  The records do not contain any reference to a police officer or rape or sexual assault of any kind.  The records do not note an increase in depressive symptoms.  It does appear that Plaintiff's Lexapro dosage was increased in December 2004, but there is no indication that this was connected in any way with the alleged rape that took place a year and a half prior to that time.

This evidence is not sufficient to overcome Defendants' motions for summary judgment, and Defendants are entitled to judgment as a matter of law with respect to Count Six.

PDF created with FinePrint pdfFactory trial version  www.pdffactory.com

of another, and has been said to be the consummation of the assault." *Id.* Defendant Randolph argues that Plaintiff has failed to establish that he threatened to harm her or that he touched her without her consent. Defendant Randolph's argument fails. Plaintiff has presented a great deal of evidence in support of her assault and battery claim, and she has demonstrated that disputed issues of material fact remain with respect to Count Five. Therefore, Defendant Randolph is not entitled to judgment as a matter of law with respect to Count Five.

2.        *Defendant City*

In Counts Five, Seven, and Eight, Plaintiff brings state law tort claims against Defendant City. In Count Five, Plaintiff appears to allege that Defendant City is liable for Defendant Randolph's assault and battery against her because Defendant City, as Defendant Randolph's employer, is vicariously liable for his wrongful conduct.[24] In Count Seven, Plaintiff alleges that Defendant City negligently hired and retained Defendant Randolph, notwithstanding his "history of sexually deviate behavior."[25] Compl. ¶ 59. Finally, in Count Eight, Plaintiff alleges that Defendant City negligently

---

[24]Plaintiff's theory against Defendant City in Count Five is somewhat difficult to understand because Plaintiff makes allegations based on Defendant City's "custom or policy," similar to the allegations she makes with respect to her § 1983 claims. For example, Plaintiff alleges that Defendant City "had a custom or policy of deliberate indifference to Defendant Carl Randolph's well-known sexual predation of women, and the fear for bodily harm that it produced among women in the community, including Plaintiff." Compl. ¶ 50. Plaintiff further alleges that Defendant City "had a policy and custom of allowing Defendant Officer Randolph to sexually harass citizens, and thereby caused Plaintiff's fear of bodily harm that actualized in physical injury and significant fear for Plaintiff's life." Compl. ¶ 51.

Count Five, however, is not brought pursuant to § 1983 and appears to be based only on a state law tort claim for assault and battery. Therefore, the Court construes Count Five as an ordinary state law tort action against Defendant City and presumes Plaintiff's theory of liability is that Defendant City is vicariously liable for Defendant Randolph's actions.

[25]Plaintiff further alleges that Defendant Randolph's behavior was well known in the community and that Defendant City failed to reasonably evaluate his psyche and failed to terminate his employment. Compl. ¶ 60-62.

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

supervised Defendant Randolph in that it failed to supervise or otherwise control his readily detectible and preventable behavior. Compl. ¶ 64-66. In moving for summary judgment, Defendant City argues that it is shielded from liability for all three tort counts due to its sovereign immunity. As alternative bases for judgment in its favor, Defendant City also argues that it cannot be held vicariously liable for Defendant Randolph's actions because he was acting outside the scope of his employment and that Plaintiff has failed to produce evidence to support her allegations.

In Missouri, public entities enjoy the tort immunity they would have been entitled to prior to September 12, 1977, except under certain circumstances not applicable here.[26] Mo. Rev. Stat. 537.600. When the defendant is a municipality, to determine whether sovereign immunity applies, a court must determine whether the activity giving rise to the injury was an exercise of a governmental or a proprietary function. *State ex rel. Bd. of Trustees of City of N. Kansas City Mem'l Hosp. v. Russell*, 843 S.W.2d 353, 358 (Mo. 1992). A municipal corporation, by its very nature, can perform both proprietary and governmental functions. *Oberkramer v. City of Ellisville*, 650 S.W.2d 286, 294 (Mo. Ct. App. 1983). A municipality is immune from liability for actions arising from its governmental function, but is not immune from liability for acts arising from its proprietary function. *Russell*, 843 S.W.2d at 358. When examining the question of whether an activity is proprietary or governmental, the focus is on the nature of the municipality's activity and not on the particular conduct or motives of the municipal employee performing the function. *See id.*; *Nichols v. City of*

---

[26]These exceptions include circumstances where the injury: (1) directly results from the negligence by a public employee arising out of the operation of a motor vehicle within the course of her or his employment; (2) is caused by the condition of the public entity's property; or (3) is covered by liability insurance. Mo. Rev. Stat. 537.600.

The doctrine of sovereign immunity includes intentional torts as well as those based on negligence. *Mitchell v. Village of Edmundson*, 891 S.W.2d 848, 850 (Mo. Ct. App. 1995).

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

*Kirksville*, 68 F.3d 245, 247 (8th Cir. 1995). A proprietary function is an act performed for the special benefit or profit of the municipality as a corporate entity (*e.g.* providing local necessities and conveniences to its own citizens). *See Oberkramer*, 650 S.W.2d at 295; *Nichols*, 68 F.3d at 247. A governmental function is an act performed by the municipality as an agent of the state, for the common good of all. *Nichols*, 68 F.3d at 247.

Plaintiff argues that Defendant City was acting pursuant to a proprietary function and that sovereign immunity does not apply. Defendant City insists that it was acting pursuant to a governmental function and that sovereign immunity shields it from liability. Here, the Court must examine the nature of the function being performed by Defendant City. Plaintiff's allegations in Counts Five, Seven, and Eight seek to hold Defendant City liable for the actions of Defendant Randolph, one of its employee police officers. Specifically, Plaintiff alleges that Defendant City should have prevented assault and battery, should not have ever hired Defendant Randolph, should not have retained Defendant Randolph, and should have done something more to supervise Defendant Randolph. These allegations relate to Defendant City's operation and maintenance of its police force. "[T]he operation and maintenance of a police force is a governmental function." *Oberkramer*, 650 S.W.2d at 295-96. Further, the hiring and firing of municipal employees is a governmental function. *Nichols*, 68 F.3d at 247. Here, Plaintiff's claims against Defendant City are based on the negligent or wrongful performance of its duties related to the operation and maintenance of its police force, which is clearly a governmental function. Therefore, sovereign immunity applies and Defendant City cannot be held liable for its alleged tortuous conduct. *See, e.g. Carmelo v. Miller*, 569 S.W.2d 365, 368 (Mo. Ct. App. 1978) (claim that police board failed to adequately train, supervise, command, and control police officers covered by sovereign immunity because plaintiff's claim was based on the

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

negligent or wrongful performance of a governmental function).  Therefore, Defendant City is entitled to judgment as a matter of law with respect to Counts Five, Seven, and Eight.[27]

## IV.  CONCLUSION

As explained herein, Defendant City is entitled to judgment as a matter of law with respect to all of Plaintiff's claims against it.  Further, because Defendant Randolph is not entitled to qualified immunity and because significant questions of material fact remain with respect to Counts One, Two,

---

[27]There are alternative bases upon which to grant judgment as a matter of law to Defendant City with respect to these claims.  First, with respect to Count Five, "[u]nder the doctrine of *respondeat superior*, a principal is liable for its agent's acts that are (1) within the scope of employment and (2) done as a means or for the purpose of doing the work assigned by the principal."  *Gibson v. Brewer*, 952 S.W.2d 239, 245-46 (Mo. 1997).  The test "is not whether the servant's act was committed during the term of his employment, but whether it was committed with the intent to further the purposes of the master."  *Bates v. U.S.*, 517 F.Supp. 1350, 1355 (D.C. Mo. 1981).  Here, the sexual misconduct that forms the basis of Plaintiff's allegations of assault and battery is not within the scope of employment of a police officer.  Further, Defendant Randolph's alleged sexual assault of Plaintiff was not based on an intent to perform Defendant City's business or further its purposes, but was instead done to fulfill his own personal purpose.  *See Bates*, 517 F.Supp. at 1357.  Therefore, Defendant City cannot be held liable under a theory of *respondeat superior* with respect to Count Five.  *See, e.g.*, *Gibson*, 952 S.W.2d at 246 (intentional sexual misconduct and intentional infliction of emotional distress not within scope of employment of a priest and no *respondeat superior* liability attaches).  Plaintiff's reliance on *St. John v. United States*, 240 F.3d 671 (8th Cir. 2001), is misplaced.  *See St. John v. U.S.*, 240 F.3d 671 (applying South Dakota foreseeability test in the context of a Federal Torts Claims Act case; South Dakota law not followed in Missouri).

Next, with respect to Count Seven, Defendant City has produced an affidavit from Chief Webb stating that there was nothing in Defendant Randolph's background which would have put the City on notice that he was likely to engage in the conduct of which he is accused. Def. City's Ex. A, ¶¶ 15, 19, 20.  Plaintiff has failed to produce any admissible evidence to refute the evidence offered by Defendant City and has failed to produce any admissible evidence in support of her allegations in Count Seven that the City could or should have known that Defendant Randolph was likely to engage in the conduct of which he is accused.

Finally, with respect to Count Eight, Defendant City has produced an affidavit from Chief Webb stating that there was nothing to suggest that Defendant Randolph was incapable of patrolling on his own and answering calls without assistance or direction.  *See* Def. City's Ex. A., ¶¶ 24, 25.  Plaintiff has failed to produce any admissible evidence to refute the evidence offered by Defendant City and has failed to produce any admissible evidence in support of her allegations in Count Eight that Defendant City was negligent in its supervision of Defendant Randolph.

Four, and Five against him, he is not entitled to summary judgment on those counts. As explained

herein, he is, however, entitled to judgment with respect to Count Three. Thus, Counts One, Two,

Four, and Five remain pending against Defendant Randolph and will be decided by a jury at a trial on

the merits.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Vinita Park's Motion for Summary Judgment

[doc. #30] is **GRANTED**. All claims against Defendant City are dismissed.

**IT IS FURTHER ORDERED** that Defendant Carl Randolph's Motion for Summary

Judgment [doc. #33] is **GRANTED**, **in part**, and **DENIED**, **in part**. Count Three is dismissed,

while Counts One, Two, Four, and Five remain.

An appropriate Order of Judgment shall accompany this Order.

Dated this <u>3rd</u> day of May, 2006.

_____
E. RICHARD WEBBER
UNITED STATES DISTRICT JUDGE

PDF created with FinePrint pdfFactory trial version www.pdffactory.com